for argument today. We'll begin in appeal number 20-30-65, Soleimane Nimaga v. Pamela Bondi, the Attorney General of the United States. And I can say for the third through sixth cases that the court will take a short recess of ten minutes after the second argument. So with that, the first argument is all remote. I see Mr. Yerman. Mr. Laforte, can you hear and see us okay in the courtroom? Yes, Your Honor. Mr. Yerman, how about yourself? Yes, I can. Thank you. Okay. Good morning to both of you. And Mr. Yerman, you may proceed when you're ready. Good morning. May it please the court, Gary Yerman on behalf of the petitioner, Mr. Nimaga. We believe the petitioner has met his burden to show that his failure to appear was due to exceptional circumstances under this court's analysis in Nazarovo, where the court looked to the entire unfortunate chain of events being asserted. In absentia orders are used to punish those who intentionally evade their responsibilities of appearing before an immigration court. In absentia orders must be rescinded when a respondent can establish exceptional circumstances for missing their court. Under the totality of circumstances involved in this case, and I do not need to waste the court's time repeating the facts, exceptional circumstances have been established along with the immediate relief of Mr. Nimaga's citizen daughter's I-130 petition, which has now been approved combined with his legal entry initially in 2000 as a student. We urge this court to grant the relief sought by the petitioner to reopen his case so that he may complete the process necessary to become a lawful permanent resident before an immigration judge. Mr. Yearman, good morning. Good morning. You know, there was a 35-day period between the burglary and the court date during which Mr. Nimaga could have made a new backup plan to get to Chicago or advise the immigration court of his situation. You know, even on the morning of the hearing when his ride fell through, he could have called the court first. I have, I really have sympathy for Mr. Nimaga, but what I think we need to know is why no reasonable jurist could find that these circumstances do not rise to the level of exceptional, as we all know, are incredibly onerous. Well, thank you for that question, Your Honor. I think the only way we can do that would be by literally stepping into the shoes of Mr. Nimaga during this particular time of his life, where he was destitute and the options were few, if any. And the one option that he thought was viable was a ride that was promised to him by his roommate. And there was no reason for him to doubt that promise. And again, once that promise was broken, what would a person with no education or experience in the law do under those circumstances, be it an American or a foreign national? They would contact the number, use a number that they thought was a number that was appropriate. And so he borrowed a phone, he tried to make the call, it didn't go through. So under these circumstances, stepping in his shoes, he tried to get a ride, he tried to make the call, but they both fell. And would you or I have other options? Would most people have other options? Yes. But standing in Mr. Nimaga's shoes, in this particular circumstance, I think he tried to use the options that were available to him, but he failed. I have been wondering about something and I might very well have missed it. My understanding was that the attorney had withdrawn, but it appears that the attorney was present at the October 1st hearing. Can you just help me with that? Well, I can tell you that Mr. Nimaga was placing proceedings in 2010 and this hearing was 2019. So it seems apparent that he and his attorney had appeared at all previous hearings, but the attorney was the only one who showed up at the hearing because it's our responsibility to still go to court, to let the judge know, to make the request in court, to withdraw as counsel, and then to let the court know that you have informed your client of the hearing date. Sure. That's why I assume he was here and I assume that's what happened on that day. Mr. Ehrman, could I ask you to explain to us the practical side of the grant of Mr. Nimaga's daughter's petition? How does that affect the case in front of us? You must be eligible for a green card and you must be admissible for a green card. His daughter is a U.S. citizen 21 years or older. When that petition became approved, he became eligible for a green card. So the next question is, is he admissible? Well, that will be determined by an immigration judge, but first you must look at the manner of entry. Did this person enter without inspection or with a false document or like Mr. Nimaga entered legally under a student visa? Because he entered legally, he's now admissible. So he has eligibility and admissibility. So how does that affect this case in front of us? Sure. Okay. So what would happen is if this court grants the petition and remands the case back to immigration judge, the immigration judge will decide two things. Will he decide the I-45, the application for a green card and look at all the factors that need to be looked at? Or will he terminate the case and have USCIS decide whether the green card should be issued? My guess is in this case, the judge in Chicago will keep the case, review all the facts to determine if Mr. Nimaga is qualified to be approved to get a green card. That's the optimistic view from your point of view. It is. And if he's not, then the judge will deny the I-45, order him removed. Mr. Ehrman? Yes. What if we deny the petition? What happens to the daughter's petition? It basically will get vacated. And why is that? Well, he would have to return to Mali and he would need a waiver to return. And having a U.S. citizen child does not qualify you for a waiver. You would need a U.S. citizen or green card holder spouse or parent. So there's no plan B option. I want to make sure that I understand. So your point is, if we were to reverse or vacate the order below, would that have the effect of rescinding the removal order? Yes, it would. And it would go back in front of the immigration court. And the immigration court will look at all the factors, whether he's qualified to receive lawful permanent residence or not. He doesn't have a free golden ticket waiting for him. He must prove to an immigration court that he's qualified and meets all the requirements. Mr. Ehrman, you saved a little bit of time for rebuttal. We can reserve that remainder and go to Mr. Laforte, if you prefer. Thank you. Okay. Mr. Laforte, good morning. Good morning, Your Honor. And may it please the court, Dietz Laforte on behalf of the respondent in this particular case. The agency here properly exercises discretion in denying petitioner's motion to reopen because he failed to show his absence. It was due to exceptional circumstances. 8 U.S.C. 1229 alpha establishes a goalpost, a right and left goalpost, regarding what should be characterized as exceptional circumstances. Here, burglary and poverty are not. As Judge Rovner pointed out, there were 35 days that transpired between the burglary and the hearing. He should have had a backup plan, as Judge Rovner said. Take, for example, us. Both counsels are appearing remotely. We had a backup plan. Petitioner could have done the exact same thing. He had multiple options. He had multiple attorneys, three different ones, in fact, that he dealt with in the past. He could have called his current attorney that appeared on the day of the hearing. He could have called the I.J., emailed or written the I.J. or he could have, like us, appeared remotely. He did none of that. That's a key fact here in the agency's decision. Yes, Judge. I'm sorry to interrupt you, but do you agree with Mr. Yerman's recitation of where we stand at this moment? I respectfully note, Your Honor, I do not. So, Petitioner did request, Judge Hamilton asked about the 130. To update the court, all parties invoked DHS's assistance regarding a joint motion to reopen pursuant to that I-130. DHS has declined twice to administratively close or terminate or join in a motion to reopen. Now, that does not preclude Petitioner from filing the motion on his own accord before the board. A lot of time has transpired. I don't recall exactly, but over a year. At no point has Petitioner filed a motion to reopen with the board. In terms of the procedural disposition of this case, I believe Judge Hamilton asked about what if the PFR is denied. How does that impact Petitioner's ability to continue his pursuit of of relief regarding that 130? It doesn't impact it at all. He still can file the NTR. Those are two mutually exclusive issues, such that if the court were to grant the PFR and remanded it back, my position is different than my colleague. That's not correct. The IJ is solely constricted to the issues before us, whether or not burglary and poverty are exceptional circumstances. This is not the vehicle to get it back in front of the judge to consider everything holistically. That's what the motion to reopen is for. And as far as I'm aware of, as of this morning, no motion to reopen has been filed. That sort of dovetails into these alternatives. As you said, Judge Robner, the backup plans, the multiple options that Petitioner has, that's yet another option. And as of today's date, he has not taken advantage of that. And what would happen if, when we leave court today, he does take advantage of that? It would proceed on its own. Sui generis, Brad, Judge Robner. So if the petition for review is denied and the court finds that the agency properly exercises discretion here, what happens is we have a final removal order, but Petitioner would file the NTR before the board. Sorry, the what? Would file the what? I'm sorry, the Petitioner would file the motion to reopen. Okay. We are not as familiar with these acronyms as you are. I apologize, Judge. So the Petitioner would file the motion to reopen before the Board of Immigration Appeals and ask for consideration to reopen proceedings, terminate the removal order based on his approval, his approved I-130, with a request to remand back to the immigration judge for determination as to whether or not he is eligible and would receive adjustment status. Now, that's a discretionary determination. Just because he's got an approved I-130 doesn't necessarily guarantee that he'll adjust status, aka obtain his green card. That is all within the board's discretion, and should it be remanded, the immigration judge's subsequent discretion regarding the issue of adjustment status. So that issue, Judge Hamilton, is completely separate and distinct from the issue before the court. It should not weigh in the court's decision at all. They're two separate issues. Here, the court should be focused in on whether or not burglary and poverty qualified as exceptional circumstances to excuse his absence in court. And we have jurisprudence in Mena Mendoza and Bauer that guide us, that along with 8 U.S.C. 1229 alpha, that says instances like exceptional circumstances have got to be similar to battery. I'm quoting the statute here. Battery, extreme cruelty, serious illness, or death. These circumstances, burglary and poverty, do not equate to that, particularly since this financial situation existed at least six months prior to this hearing, and the burglary occurred 35 days prior. My colleague asked us multiple times to step into the shoes of petitioner what we have, and went by creating alternatives, by appearing remotely. And certainly he could have done the same. He had alternatives. Take Nazarova, for instance, Your Honors. My colleague cited that as a seminal case. In that particular case, the exceptional circumstances was the byproduct of government action. The government failed to provide an interpreter. So the petitioner in that particular case immediately exercised an alternative option and went out and hired her own interpreter. And on the day of the hearing, her own interpreter failed to show up. So she was left with two poor choices. Either she show up in court without the interpreter, or wait for the interpreter. But when she was late, she immediately contacted the court. Here, we don't have that sense of immediacy. We don't have government action that initiated the circumstance. And we don't have the petitioner exercising any multiple options or taking any initiative to contact his attorney that appeared before the immigration judge, or to contact the immigration court directly. And I think that is a key element here that distinguishes this case from Petitioner's seminal case of Nazarova. If the court doesn't have any further questions, the government would like to briefly conclude by saying that the agency properly exercised its discretion in denying the motion, because the petitioner failed to show his absence was due to exceptional circumstances. That's the sole issue that this particular case rests on. Not any discretionary decisions regarding his I-130 or his I-485 to adjust status. That is completely that's sui generis and separate than the issues before the court. A denial of the PFR does not impact petitioner's ability to pursue that relief in any way, shape or form. In that regard, we'd ask that you deny the petition to me. Thank you. Mr. Lafort, you're quite welcome. Mr. Yerman, you've had a little time remaining. You're welcome to use it. You may be muted. Lost a few seconds there. Okay. If the court grants the petitioner's application for relief and instructs the BIA to reopen the case based upon exceptional circumstances, the immigration judge will have full authority to hear whatever relief is available in front of the court at the time. Number one. Number two, yes, a motion to reopen can be filed, but it's based upon Sue Sponte. And practically speaking, your honors, in the 27 years that I've been practicing immigration law, the BIA has never granted a motion to reopen after a final removal order based upon new facts, such as an approved petition by a spouse or a child. They've said clearly that that would allow people to sit around and wait for a petition to get approved. So unfortunately, the motion to reopen is a dead end and it's not possible. So this petition for review is denied. Mr. Namaga will have no relief available as he will have a final removal order and he will be removed from this country without any waivers possible to return. Thank you. You're quite welcome, Mr. Yerman. Mr. Laforte, thanks to you as well. We appreciate it. We will take the appeal under advisement. Thank you.